

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-06-00398-CR

CHRISTOPHER GARFIAS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION ON REMAND

----------

In one issue raised within his supplemental brief on the remand of this appeal from the court of criminal appeals,[1] appellant Christopher Garfias contends that his convictions for aggravated robbery with a deadly weapon and

---

[1]*See Garfias v. State*, No. PD-1323-08, 2011 WL 2674848, at *3 (Tex. Crim. App. June 29, 2011) (not designated for publication) (reversing *Garfias v. State*, No. 02-06-00398-CR, 2008 WL 2404268, at *1 (Tex. App.—Fort Worth June 12, 2008) (mem. op., not designated for publication)). Two justices from the panel of our prior opinion in this appeal, including that opinion's author, no longer serve on this court as elected justices.

aggravated assault with a deadly weapon violate his constitutional right to be free from double jeopardy. We affirm in part and vacate in part.

## Background Facts

One early morning in 2006, appellant went to a gas station store in Hurst and shot the clerk, Shahid Shahid, four times, critically injuring him. As a result of that one event, a Tarrant County grand jury returned a two-count indictment charging appellant with aggravated robbery with a deadly weapon and aggravated assault with a deadly weapon.[2] The indictment alleged that appellant,

on or about the 1st day of March 2006, did

THEN AND THERE INTENTIONALLY OR KNOWINGLY, WHILE IN THE **COURSE OF COMMITTING THEFT** OF PROPERTY AND WITH INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, **THREATEN OR PLACE SHAHID SHAHID IN FEAR OF IMMINENT BODILY INJURY OR DEATH**, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO WIT: A FIREARM,

COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF MARCH, 2006, DID INTENTIONALLY OR KNOWINGLY **CAUSE BODILY INJURY** TO SHAHID SHAHID BY SHOOTING HIM WITH A FIREARM AND THE DEFENDANT **DID USE OR EXHIBIT A DEADLY WEAPON** DURING THE COMMISSION OF THE ASSAULT, TO-WIT: A FIREARM[.] [Emphasis added.]

Appellant's court-appointed counsel filed several pretrial documents but did not assert at any point in the trial court's proceedings that constitutional

---

[2]*See* Tex. Penal Code Ann. §§ 22.02(a)(2), 29.03(a)(2) (West 2011).

prohibitions against double jeopardy prevented appellant from being tried for and convicted of both offenses. Appellant pled not guilty to both offenses, but the jury convicted him of both of them. After hearing additional evidence and argument, the jury assessed his punishment at sixty years' confinement for the aggravated robbery conviction and imprisonment for life for the aggravated assault conviction.[3] The trial court sentenced appellant in accordance with the jury's verdict and ordered the sentences to run concurrently.

Appellant appealed his convictions to this court, raising five points. In his first two points, he argued that the two convictions violated his federal Fifth Amendment right to be free from double jeopardy. In this court's June 2008 prior opinion, the court rejected all of appellant's points, including his argument about double jeopardy. *See Garfias*, 2008 WL 2404268, at *1–4. Concerning double jeopardy, the court held, under the standard articulated by the court of criminal appeals in *Gonzalez v. State*,[4] that appellant had not preserved his complaint for our review because a violation of double jeopardy was not clearly apparent on the face of the record. *Garfias*, 2008 WL 2404268, at *1–2. The court concluded that under *Blockburger v. United States*,[5] because aggravated robbery and

---

[3]A prior felony conviction, which had been described by a repeat offender notice that appellant pled true to, enhanced both of these sentences. *See* Tex. Penal Code Ann. § 12.42(b), (c) (West Supp. 2012).

[4]8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

[5]284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

3

aggravated assault, as charged in the indictment, each required proof of at least one element that the other did not, the offenses were not subsumed within each other. *Garfias*, 2008 WL 2404268, at *1–2. After granting appellant's petition for discretionary review, the court of criminal appeals vacated this court's prior judgment and remanded the appeal. *Garfias*, 2011 WL 2674848, at *3. That court explained,

> In the course of conducting only a *Blockburger* analysis, the court of appeals noted that the aggravating element of robbery that was pled in the indictment was that the appellant "threatened or placed" his victim "in fear of imminent bodily injury or death," while the aggravating element alleged for the assault was that the appellant actually "caused bodily injury." . . .
>
> While we do not disagree with the court of appeals's *Blockburger* analysis, we disagree that such an analysis sufficiently answers whether a double-jeopardy violation is clear from the face of the record for purposes of error preservation under *Gonzalez*.
>
> In another *Gonzales* [*v. State*[6]] case (different spelling), we recently explained:
>
>> The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense for which he has been previously acquitted or previously convicted. It also protects him from being punished more than once for the same offense in a single prosecution. Sameness in this latter context is purely a matter of legislative intent. With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. The traditional indicium of that legislative

---

[6]304 S.W.3d 838, 845–46 (Tex. Crim. App. 2010).

4

intent is the so-called same elements test of *Blockburger v. United States*. According to that test, it should be presumed that the Legislature did not regard two statutorily defined offenses to be the same so long as each provision requires proof of a fact which the other does not. However, for purposes of multiple-punishment analysis, the *Blockburger* test is only a tool of statutory construction—and not even an exclusive one. An accused may be punished for two offenses even though they would be regarded as the same under a *Blockburger* analysis if the Legislature has otherwise made manifest its intention that he should be.

In *Ex parte Ervin*,[7] we recognized that [t]he *Blockburger* test's status as a mere rule of statutory construction raises an inverse conclusion as well: the *Blockburger* test cannot authorize two punishments where the legislature clearly intended only one. *Thus, even if a straightforward application of the Blockburger test would suggest that two offenses are not the same for double jeopardy purposes, if other indicia manifest a legislative intent that an accused not be punished for both offenses if they occur in the course of a single transaction, then an accused may not be punished for both offenses even if both convictions result from a single trial. . . .*

Whether or not a double-jeopardy violation is clearly apparent on the face of the record is, therefore, not simply a function of a *Blockburger* analysis. The court of appeals should have examined other indicia of legislative intent as well.

---

[7]991 S.W.2d 804, 807 (Tex. Crim. App. 1999). The issue in *Ervin* was whether a defendant could be convicted for intoxication manslaughter and manslaughter when only one person had died. *Id.* at 805–06. Although the relevant statutes were not the "same" under *Blockburger*, the court of criminal appeals nonetheless held that the defendant's two convictions under the statutes violated double jeopardy. *Id.* at 806, 814, 817. The court reasoned, in part, that "manslaughter and intoxication manslaughter have a common focus: the death of an individual. Both crimes are result of conduct crimes with death being the result." *Id.* at 816.

*Id.* at *1–2 (emphasis added) (footnotes omitted).

Appellant has filed a supplemental brief on remand in which he again argues that his convictions for aggravated robbery and aggravated assault violate the constitutional prohibition of double jeopardy. The State has also filed a brief upon remand, contending that appellant's right against double jeopardy has not been violated.

**The Preservation and Substance of Appellant's Double Jeopardy Claim**

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall be subject for the same offense "to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* Tex. Const. art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."). A potential double jeopardy violation may be forfeited by the defendant's failure to assert it in the trial court. *Langs v. State*, 183 S.W.3d 680, 686–87 (Tex. Crim. App. 2006). But a double jeopardy claim "may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez*, 8 S.W.3d at 643 (footnotes omitted).

"There are three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the

6

same offense after conviction; and (3) multiple punishments for the same offense." *Langs*, 183 S.W.3d at 685; *see Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). A multiple punishments violation of double jeopardy, which appellant asserts in this appeal, may arise in two situations: (1) the lesser-included offense context, in which the same conduct is punished twice (once for the basic conduct, and a second time for that same conduct plus more); and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once. *Langs*, 183 S.W.3d at 685. The ultimate question is whether the legislature intended to impose multiple punishments. *Id.* at 688; *see Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). In our prior opinion in this appeal, through our analysis and holding under *Blockburger*, we implied that appellant did not suffer double jeopardy under the lesser-included offense context, but as the court of criminal appeals explained, we did not adequately address whether appellant had been punished for the same criminal act under two distinct statutes when the legislature intended the conduct to be punished only once.

In *Gonzales*, the court of criminal appeals explained that to determine the legislature's intent of whether a defendant may be convicted of two offenses that arise from the same criminal transaction, courts may consider

whether the offenses['] provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, . . . and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

304 S.W.3d at 846 (quoting *Ervin*, 991 S.W.2d at 814); *see also Bigon*, 252 S.W.3d at 371 (discussing the *Ervin* factors in determining that convictions for felony murder and intoxication manslaughter for the death of one individual in one incident violated double jeopardy).

In *Gonzales* and other cases, the court of criminal appeals has indicated that the focus, or gravamen, of the crimes at issue is the best signal to determine whether the legislature intended to punish one incident through multiple convictions. *See Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011); *Gonzales*, 304 S.W.3d at 848. Aggravated robbery and aggravated assault share a common focus. A person commits robbery under section 29.02 of the penal code if, in the course of committing theft and with intent to obtain or maintain control of property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury. Tex. Penal Code Ann. § 29.02(a) (West 2011). Robbery may become aggravated robbery by adding the fact that the person used or exhibited a deadly weapon. *Id.* § 29.03(a)(2). The court of criminal appeals has concluded that the gravamen of robbery offenses, including

8

aggravated robbery, is the defendant's assaultive conduct. *See Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010); *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999); *Rohlfing v. State*, 612 S.W.2d 598, 602 (Tex. Crim. App. [Panel Op.] 1981) (explaining that the "current penal code robbery offenses are assaultive in nature"). This makes sense because the types of conduct described in section 29.02 match, nearly word for word, two of the three ways that a person may commit assault under section 22.01. *See* Tex. Penal Code Ann. § 22.01(a)(1)–(2) (West 2011). Like robbery's elevation to aggravated robbery, assault under section 22.01(a) may become aggravated assault by adding that the defendant used or exhibited a deadly weapon. *Id.* § 22.02(a)(2).

The closeness of the relationship between aggravated robbery and aggravated assault is illustrated by the fact that under various circumstances, aggravated robbery may contain all of the elements of aggravated assault. A person may commit aggravated assault by (1) intentionally or knowingly causing bodily injury to another and (2) using or exhibiting a deadly weapon during the commission of the assault. *See id.* §§ 22.01(a)(1), .02(a)(2). A person may commit aggravated robbery by engaging in those same two acts while committing theft and having the intent to obtain or maintain control of the property. *Id.* §§ 29.02(a)(1), .03(a)(2). Similarly, a person may commit aggravated assault by (1) intentionally or knowingly threatening another with imminent bodily injury and (2) using or exhibiting a deadly weapon during the commission of the assault. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), .02(a)(2).

9

A person may commit aggravated robbery by engaging in those same two acts while committing theft and having the intent to obtain or maintain control of the property. *Id.* §§ 29.02(a)(2), .03(a)(2). For these reasons, aggravated assault may be, under proper circumstances, a lesser-included offense of aggravated robbery. *See Girdy v. State*, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006) (concluding that if "the prosecution, in proving the elements of one charged offense, also *necessarily* proves another charged offense, then that other offense is a lesser-included offense"); *Smith v. State*, 131 S.W.3d 502, 503 (Tex. Crim. App. 2004) ("The appellant was charged with aggravated robbery. In October 1996, he pleaded guilty to the lesser-included offense, aggravated assault."); *see also* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006) (stating that an offense is a lesser-included offense if it is "established by proof of the same or less than all the facts required to establish the commission of the offense charged"). Two offenses are the same for double jeopardy purposes if one offense contains all of the elements of the other. *Zuliani v. State*, 353 S.W.3d 872, 872 (Tex. Crim. App. 2011).

It is true that by the way the State charged the offenses in this case, aggravated assault was not a lesser-included offense of aggravated robbery, and as explained in our prior opinion, the offenses were therefore not the same under *Blockburger*. But the facts that the State proved to obtain its aggravated assault conviction (that appellant intentionally or knowingly caused bodily injury to Shahid and used or exhibited a deadly weapon) would have been sufficient to

also obtain an aggravated robbery conviction by only adding the facts of committing theft and having the intent to obtain or maintain control of the property, which is required for aggravated robbery in any event. The fact that double jeopardy principles would have presumptively precluded multiple punishments under the facts of this case (absent a clear expression of legislative intent otherwise) for aggravated robbery and aggravated assault if those offenses were charged in other ways supported by the evidence indicates to us that double jeopardy should likewise prevent multiple punishments even though the offenses were carefully charged through a method that avoided offending *Blockburger*. *See Littrell v. State*, 271 S.W.3d 273, 278 (Tex. Crim. App. 2008) ("Because aggravated robbery as pled in Count Two of the appellant's indictment is a lesser-included offense of felony murder as pled in Count One, the presumption applies that they constitute the same offense for double-jeopardy purposes."); *Quintanilla v. State*, 40 S.W.3d 576, 579 (Tex. App.—San Antonio 2001, pet. ref'd) ("[I]f all the elements of one statutory offense are contained within the other, it is presumed that the two offenses are the same and that the Legislature did not intend to authorize punishment for both."). In other words, we conclude that the similarity of how aggravated assault and aggravated robbery could have been charged under the evidence in this case—as both containing the element of bodily injury or both containing the element of the threat of imminent bodily injury—weighs in favor of a conclusion that the legislature did not intend, in such circumstances, for the offenses to be punished multiply.

11

We understand that the types of assault that respectively underlie counts one and two of the indictment in this case, assault by threat and assault causing bodily injury, are not manners and means of committing assault but are altogether different offenses. *See Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008); *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref'd) (explaining that in part because bodily injury assault is a "result of conduct" offense and assault by threat is a "nature of conduct" offense, the jury was required to unanimously agree about whether bodily injury assault or assault by threat supported a single aggravated assault conviction); *Marinos v. State*, 186 S.W.3d 167, 174 (Tex. App.—Austin 2006, pet. ref'd) (holding similarly); *see also Woodard v. State*, 294 S.W.3d 605, 608 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Like the assault statute, the robbery statute provides two separate, underlying robbery offenses—robbery causing bodily injury and robbery by threat."). We recognize that courts of appeals have used this rationale to hold that when the types of assault occur through separate acts, two convictions for assault-related offenses (included aggravated robbery) may be obtained. *See, e.g., Marcotte v. State*, No. 07-01-00418-CR, 2003 WL 103139, at *1–2 (Tex. App.—Amarillo Jan. 10, 2003, no pet.) (not designated for publication) (holding that the defendant was properly convicted of two counts of aggravated assault when he pointed a gun at a woman, drove away, and later came back and shot it at her); *Renteria v. State*, Nos. 11-02-00062-CR, 11-02-00063-CR, 2002 WL 32344565, at *1–2 (Tex. App.—Eastland Aug. 15, 2002, no

12

pet.) (not designated for publication) (holding that the defendant was properly convicted for two counts of aggravated assault when he threatened his girlfriend by shoving the muzzle of a shotgun into her mouth and later caused bodily injury by striking her in the face with the butt of the shotgun).

We cannot fathom, however, that under the circumstances of this case, the legislature would intend to punish one continuous assaultive act under multiple assault-related offenses. *Cf. Bigon*, 252 S.W.3d at 372 ("[I]t is hard to fathom that the legislature intended for one drunk-driving accident to result in multiple homicide convictions for each victim."). For example, we cannot imagine that if a person committed one uninterrupted act of slowly rearing back with a closed fist and punching someone, the legislature would intend for the person to be convicted of both causing-bodily-injury assault, which is typically a Class A misdemeanor under section 22.01(a)(1) of the penal code, and threatening-another-with-imminent-bodily-injury assault, which is typically a Class C misdemeanor under section 22.01(a)(2). *See* Tex. Penal Code Ann. § 22.01(a)(1)–(2), (b), (c). In such a case, the act of slowly rearing back, although possibly threatening, is a "step[] along the way" of committing causing-bodily-injury assault. *See Lopez v. State*, 108 S.W.3d 293, 300 n.28 (Tex. Crim. App. 2003). And we have held as much in a case in which the facts and legal issues were similar to those in this case. *See Naji v. State*, No. 02-06-00260-CR, 2007 WL 1266872, at *1–3 (Tex. App.—Fort Worth Apr. 26, 2007, pet. ref'd) (mem. op., not designated for publication). Naji had pointed a gun at the victim, Lusk,

13

before (and apparently after) shooting it at him. *Id.* at *1–2. The grand jury indicted him for aggravated robbery by threat and aggravated assault by causing bodily injury, and a jury convicted him for those offenses. *Id.* On appeal, he argued that punishment for the same conduct of using the gun to threaten bodily injury and to cause bodily injury violated double jeopardy. *Id.* at *2. We agreed, stating,

> The Texas Court of Criminal Appeals has held that "[r]obbery is a form of assault." The gravamen of robbery is the assaultive conduct and not the theft. The allowable unit of prosecution is the complainant. Because robbery is an assaultive offense, there is no robbery without an assault. Consequently, the aggravated assault in this case was a necessary part of the aggravated robbery.
>
> . . . .
>
> In the case now before this court, aggravated robbery was the goal. When Appellant shot Lusk, he did so in furtherance of that goal. The shooting was just a "step along the way." The State cannot create two separate offenses by pleading use and exhibition of a firearm in the robbery and shooting with a firearm as separate offenses.

*Id.* at *2–3 (footnotes omitted).

We are not compelled to depart from our holding in *Naji*, in part because our reasoning in that case has support from the rationale of holdings of the court of criminal appeals related to other crimes. For instance, in *Lopez*, a case in which the defendant had been convicted of delivering (by offering to sell) and possessing while intending to deliver the same cocaine, that court held that a defendant could not be convicted of "several 'delivery' convictions where there is only one single sale of one drug." 108 S.W.3d at 300. The court reasoned that

14

the two convictions violated double jeopardy "because the steps in this single drug transaction were all 'the result of the original impulse,' and therefore each step was not a 'new bargain.'" *Id.* at 301 (quoting *Blockburger*, 284 U.S. at 303, 52 S. Ct. at 181).[8]  The court also opined that the State's position—that a defendant could be convicted for each act of negotiating to sell drugs, possessing the drugs with intent to deliver them, and delivering them—did not "comport with common sense." *Id.* at 297.

Similarly, in *Patterson v. State*, the defendant had been convicted of aggravated sexual assault, indecency with a child by contact, and indecency with a child by exposure.  152 S.W.3d 88, 89 (Tex. Crim. App. 2004).  Although the court of criminal appeals did not decide the case on the basis of double jeopardy, it held that the defendant's conviction for indecency with a child by exposure could not stand, reasoning,

> While it is clear from the plain language of the various statutes that the legislature intended harsh penalties for sexual abuse of children, there is nothing in the language to suggest that it intended to authorize "stop-action" prosecution. . . .
>
> In this case, there were two essentially identical assaults, separated by a short period of time.  On both occasions, appellant exposed his genitals and penetrated the complainant's anus. . . . The record in this case does not show an occasion during the assaults when the exposure was a separate offense.  Under the

---

[8]The court in *Lopez* compared the facts in that case with facts of an aggravated sexual assault case in which the court had held that different sexual acts that occurred in the same transaction could support multiple convictions. *See id.* at 300 n.28 (citing *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)).

15

facts of these incidents, exposure was incident to and subsumed by the aggravated sexual assault.

*Id.* at 92. Similarly to the facts in *Patterson*, we conclude that the threat of appellant's pointing the gun at Shahid was necessary to, incident to, and subsumed by appellant's causing bodily injury to Shahid by shooting him.[9] *See id.*; *see also Meine v. State*, 356 S.W.3d 605, 610 (Tex. App.—Corpus Christi 2011, pet. ref'd) (mem. op.) ("The act of pointing the gun with intent to kill, without facts negating appellant's intent to threaten the complainants with imminent bodily injury, leads us to conclude that the element of threat—an intention to cause apprehension of imminent bodily injury—is subsumed by pointing the gun at them."); *Barnes v. State*, 165 S.W.3d 75, 88 (Tex. App.—Austin 2005, no pet.) (holding that the defendant had been subjected to double jeopardy for multiple aggravated sexual assault convictions because genital-to-genital contact in the course of penile penetration was subsumed in the act of penetration).

We recognize that some of the factors discussed in *Gonzales* weigh in favor of a conclusion that the legislature intended multiple punishments for aggravated robbery and aggravated assault, at least under some circumstances.

_____

[9]We may look to the evidence at trial to determine what instances of conduct are jeopardy-barred. *See Ex parte Goodbread*, 967 S.W.2d 859, 861 (Tex. Crim. App. 1998). The State does not argue that the evidence establishes any threat made by appellant apart from his pointing the gun at Shahid during the shooting. Shahid testified that he and appellant were "face to face," that Shahid asked appellant not to shoot him, and that appellant did not listen and shot four times. Shahid indicated that he did not have an argument with appellant before appellant shot him.

16

Aggravated assault and aggravated robbery are not contained in the same statutory section, are not phrased in the alternative, are not named similarly (aside from both being aggravated offenses), and have overlapping, but not identical punishment ranges. *See Gonzales*, 304 S.W.3d at 846; *see also* Tex. Penal Code Ann. §§ 22.02(b), 29.03(b). But for the reasons expressed above, we conclude that the legislature could not have intended multiple punishments for aggravated robbery and aggravated assault under the indictment and evidence in this case.

We hold that the undisputed facts show a double jeopardy violation that is clearly apparent on the face of the record, and we also hold that the enforcement of usual rules of procedural default serves no legitimate state interests in this case. *See Gonzalez*, 8 S.W.3d at 643. We sustain the issue raised within appellant's supplemental brief on remand.

When a defendant is subjected to two punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other conviction. *Bigon*, 252 S.W.3d at 372. The most serious offense is the offense in which the greatest sentence was assessed. *Id.* at 373; *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). Therefore, we must affirm appellant's conviction for aggravated assault with a deadly weapon, for which he received a life sentence, and vacate his conviction for aggravated robbery with a deadly weapon, for which he received a sentence of sixty years' confinement. *See Cavazos*, 203 S.W.3d at 338.

17

## Conclusion

Having sustained appellant's issue in his supplemental brief, we affirm his conviction for aggravated assault with a deadly weapon and vacate his conviction for aggravated robbery with a deadly weapon.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

PUBLISH

DELIVERED:  August 9, 2012